**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X   Case No. 19-cv-10859
SHANEQUA FELDER-GREEN,

                                        Plaintiff,


                                                                **COMPLAINT**

              -against-


CAPITAL MANAGEMENT SERVICES, L.P.,
NORTHSTAR LOCATION SERVICES, LLC and
BANK OF AMERICA, N.A.,

                                        Defendants.
------------------------------------------------------------------------X

              Plaintiff, by and through her attorneys, FAGENSON & PUGLISI, PLLC, upon

knowledge as to herself and her own acts, and as to all other matters upon information and belief,

brings this complaint against above-named defendants and in support thereof alleges the

following:

                              INTRODUCTION

       1.      This is an action for damages brought by an individual  consumer

for defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692, *et seq.* which prohibits debt collectors from engaging in abusive, deceptive and unfair acts

and practices.

       2.      Further, this is an action for damages and injunctive relief brought by an

individual consumer against defendants pursuant to New York General Business Law

("NYGBL") § 349 and the tort of negligence regarding defendants' deceptive acts and

practices.

JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction pursuant to the FDCPA,  15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 and supplemental jurisdiction exists over the NYGBL § 349 claims pursuant to 28 U.S.C. § 1367.

4.      This Court has venue pursuant to 28 U.S.C. § 1391(b) in that plaintiff resides in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

PARTIES

5.      Plaintiff is a natural person who resides in this District.

6.      Plaintiff is a consumer within the meaning of 15 U.S.C. §  1692a(3) as she is a natural person who is alleged by defendants to owe a financial obligation.

7.      The financial obligation which defendants sought to collect from  plaintiff is a debt within the meaning of 15 U.S.C. § 1692a(5) in that the obligation which defendants sought to collect from plaintiff is an allegedly defaulted debt incurred for personal, family or household purposes to defendant Bank of America, N.A. ("BANA").

8.      Plaintiff is a reasonable consumer within the meaning of NYGBL §  349 who acted reasonably under the circumstances alleged herein.

9.      Defendant Capital Management Services, L.P. ("CMS") is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

10.      The principal purpose of CMS's business is the collection of defaulted consumer debts.

11.      CMS uses the mails in its business the principal purpose of which is the collection of defaulted consumer debts.

12.     CMS regularly collects or attempts to collect defaulted consumer debts owed or due or alleged to be owed or due to others.

13.     Upon information and belief, CMS is a foreign limited partnership organized under the laws of the State of Delaware.

14.     Defendant Northstar Location Services, LLC ("Northstar") is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

15.     The principal purpose of Northstar's business is the collection of defaulted consumer debts.

16.     Northstar uses the mails in its business the principal purpose of which is the collection of defaulted consumer debts.

17.     Northstar regularly collects or attempts to collect defaulted consumer debts owed or due or alleged to be owed or due to others.

18.     Upon information and belief, Northstar is a domestic limited liability company.

19.     Upon information and belief, at all times hereinafter mentioned BANA is a national bank, organized and existing under the laws of the United States.

20.     BANA was and is authorized to do business and doing business in the State of New York.

FACTUAL ALLEGATIONS

21.     Plaintiff re-alleges paragraphs 1-20 as if fully re-stated herein.

22.     At some point in time plaintiff allegedly incurred aforesaid personal debt to BANA.

23.     At some subsequent point in time BANA alleged that the debt fell into default.

24.     Subsequent to the alleged default, in or around May 2019 plaintiff received a collection letter from Northstar.

25.     Said letter is dated May 6, 2019.

26.     Northstar sent a collection letter to plaintiff dated May 6, 2019.

27.     By said letter, Northstar was attempting to collect the debt on behalf of BANA.

28.     BANA placed the debt with Northstar to collect from plaintiff.

29.     BANA hired Northstar to collect the debt from plaintiff.

30.     In the matter of the collection of the debt from plaintiff, Northstar was BANA's agent.

31.     In the matter of the collection of the debt from plaintiff, BANA was Northstar's client.

32.     After receipt of aforesaid collection letter from Northstar, plaintiff consulted with her attorneys at Fagenson & Puglisi concerning the alleged debt and the collection letter.

33.     On behalf of plaintiff, by letter dated May 21, 2019, Fagenson & Puglisi wrote to Northstar.

34.     In said letter, Fagenson & Puglisi informed Northstar that plaintiff was represented by Fagenson & Puglisi, that plaintiff should not be contacted directly and that plaintiff disputed the debt.

35.     In said letter to Northstar, Fagenson & Puglisi also requested documentation supporting the claim.

36.     Northstar received Fagenson & Puglisi's aforesaid letter.

37.     By letter dated June 10, 2019, Northstar wrote to plaintiff care of her attorneys at Fagenson & Puglisi, PLLC.

38.     In said letter, Northstar stated it was responding to Fagenson & Puglisi's request and Northstar enclosed purported verification of the debt.

39.     A copy of Northstar's said June 10 letter is attached hereto as Exhibit 1.

40.     Thereafter, by collection letter dated September 7, 2019, CMS wrote to plaintiff in an attempt to collect the same BANA debt as aforesaid.

41.     CMS sent a collection letter to plaintiff dated September 7, 2019.

42.     CMS sent its aforesaid collection letter directly to plaintiff at her home.

43.     By the letter, CMS was attempting to collect the debt on behalf of BANA.

44.     BANA placed the debt with CMS to collect from plaintiff.

45.     BANA hired CMS to collect the debt from plaintiff

46.     In the matter of the collection of the debt from plaintiff, CMS was BANA's agent.

47.     In the matter of the collection of the debt from plaintiff, BANA was CMS's client.

48.     Northstar received Fagenson & Puglisi's letter dated May 21, 2019.

49.     Northstar knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

50.     Northstar knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before CMS sent its collection letter directly to plaintiff at her home.

51.     Northstar ought to have informed BANA that plaintiff was represented by Fagenson & Puglisi before CMS sent its collection letter directly to plaintiff at her home.

52.     Northstar informed BANA that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

53.     Northstar informed BANA that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before CMS sent its collection letter directly to plaintiff at her home.

54.     BANA knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

55.     BANA knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before CMS sent its several collection letter directly to plaintiff at her home.

56.     BANA in turn informed CMS that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

57.     BANA informed CMS that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before CMS sent its collection letter directly to plaintiff at her home.

58.     CMS knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt.

59.     CMS knew that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before CMS sent its collection letter directly to plaintiff at her home.

60.     CMS should have known that plaintiff was represented by Fagenson & Puglisi in the matter of the collection of the debt before CMS sent its collection letter directly to plaintiff at her home.

61.     In any event, CMS had an affirmative duty to inquire of BANA whether plaintiff was represented by counsel before CMS communicated directly with plaintiff.

62.     CMS did not inquire of BANA whether plaintiff was represented by counsel before CMS communicated directly with plaintiff.

63.     CMS sent its letter directly to plaintiff notwithstanding its knowledge that plaintiff was represented by an attorney in the matter of the debt.

64.     CMS communicated directly with plaintiff in the sending of its collection letter directly to plaintiff at her home, notwithstanding its prior knowledge that plaintiff was represented by counsel in the matter of the debt.

65.     In the alternative, Northstar failed to inform BANA of plaintiff's legal representation before CMS sent its collection letter directly to plaintiff at her home.

66.     As a further alternative, Northstar informed BANA of plaintiff's legal representation before CMS sent its collection letter directly to plaintiff at her home.

67.     However, BANA failed to inform CMS of plaintiff's legal representation before CMS sent its collection letter directly to plaintiff at her home.

68.     Upon receipt of CMS's collection letter at her home, plaintiff felt annoyed, upset, confused, irritated and a sense that defendants wanted to harass her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

## **ALLEGATIONS AGAINST CMS**

### AS AND FOR A FIRST CAUSE OF ACTION

Improper direct communication with Plaintiff

15 U.S.C. §§ 1692c(a)(2) and 1692e

69.     Plaintiff re-alleges paragraphs 1-68 as if fully re-stated herein.

70.     Northstar informed BANA that plaintiff was represented by Fagenson & Puglisi and should not be contacted directly before CMS sent its collection letter directly to plaintiff at her home.

71.     BANA knew that plaintiff was represented by Fagenson & Puglisi and should not be contacted directly before CMS sent its collection letter directly to plaintiff at her home.

72.     BANA informed CMS that plaintiff was represented by Fagenson & Puglisi before CMS sent its collection letter directly to plaintiff at her home.

73.     BANA informed CMS that plaintiff was represented by legal counsel before CMS sent its collection letter directly to plaintiff at her home.

74.     CMS knew of plaintiff's legal representation before CMS sent its collection letter directly to plaintiff at her home.

75.     CMS knew that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before CMS sent its collection letter directly to plaintiff at her home.

76.     In any event, CMS had an affirmative duty to inquire of BANA whether plaintiff was represented by counsel in the matter of the debt before CMS communicated directly with plaintiff.

77.     CMS did not inquire of BANA whether plaintiff was represented by counsel before CMS sent its collection letter directly to plaintiff at her home.

78.     CMS sent its collection letter directly to plaintiff at her home notwithstanding its knowledge that plaintiff was represented by counsel, thereby violating the FDCPA, § 1692c(a)(2).

79.     CMS sent its collection letter directly to plaintiff at her home as a result of its violation of its affirmative duty to inquire of BANA, before communicating with plaintiff, whether plaintiff was represented by counsel, thereby violating the FDCPA, § 1692c(a)(2).

80.     Further, CMS is in violation of the FDCPA, § 1692e in that CMS's conduct in contacting plaintiff directly after knowledge of attorney representation, constitutes a deceptive and misleading means used in an attempt to collect the debt and was an effort to mislead plaintiff into communicating with CMS directly in disregard of the representation of her legal counsel.

81.     CMS is further in violation of the FDCPA, § 1692e in that CMS's conduct in contacting plaintiff directly was a result of its violation of its affirmative duty to inquire of BANA, before communicating with plaintiff, whether plaintiff was represented by counsel, and constitutes a deceptive and misleading means used in an attempt to collect the debt as an effort to mislead plaintiff into communicating with CMS directly in disregard of the representation of her counsel.

82.     Communications from debt collectors, such as those sent by defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer".

## AS AND FOR A SECOND CAUSE OF ACTION

## NYGBL § 349

83.     Plaintiff re-alleges paragraphs 1-82 as if fully re-stated herein.

84.     CMS owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

85.     CMS breached its duty to collect plaintiff's debt with reasonable care.

86.     In the exercise of reasonable care CMS ought to have ensured that for any account on which an attorney represented the consumer any communication by CMS was made with the attorney, and not with the consumer directly.

87.     The fact that CMS contacted plaintiff directly regarding the same debt for which CMS had been informed that she had attorney representation indicates a failure on the part of CMS to comply with or to perform its duty to effect collection of the debt with reasonable care.

88.     On information and belief, at all times material hereto, BANA placed dozens of consumer accounts of New York residents with CMS for collection monthly.

89.     CMS's act of communicating with plaintiff directly despite her legal representation is a deceptive act and practice.

90.     Said deceptive act and practice was committed by CMS in the conduct of a business, trade or commerce or the furnishing of a service in the State of New York and constitutes a violation of NYGBL § 349.

91.     CMS's letter to plaintiff is a form collection letter.

92.     CMS's letter to plaintiff is derived from a letter template.

93.     CMS's deceptive act and practice was consumer-oriented, in that CMS's act of communicating directly with a legally–represented consumer despite knowledge that she is represented by counsel was not an act limited to plaintiff's account, but extended to the accounts of other consumers which BANA placed with CMS for collection and on which there was legal representation.

94.     CMS maintained no agreement or procedure with BANA to ensure that BANA did not place with CMS accounts of legally–represented consumers for collection or, in the alternative, to ensure that CMS did not communicate directly with legally–represented consumers.

95.     CMS's said conduct of communicating directly with legally–represented consumers has a broader impact on consumers at large whose accounts are placed by BANA with CMS for collection and who are represented by counsel in the matter of the collection of their BANA debts.

96.     CMS owes a duty to plaintiff and consumers at large to honor their right to legal representation and CMS's failure to honor plaintiff's said right resulted in CMS sending its collection letter to plaintiff at her home, thereby improperly encouraging plaintiff to contact CMS directly about a debt for which she had the representation of counsel.

97.     Therefore, CMS's failure to honor plaintiff's legal representation by its sending of its collection letter directly to plaintiff at her home was deceptive and misleading in a material way.

98.     Plaintiff is a reasonable consumer within the meaning of the NYGBL § 349(a) and acted reasonably under the circumstances of this case.

99.     Upon receipt of CMS's collection letter at her home, plaintiff felt annoyed, upset, confused, irritated and a sense that defendants wanted to harass her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

100.     CMS violated NYGBL § 349(a) by the sending of its collection letter directly to plaintiff and is liable to plaintiff under NYGBL § 349(h).

101.     As a result of the above violations, plaintiff is entitled to an injunction against CMS and CMS is liable to plaintiff in an amount to be determined at the time of trial, plus costs and attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION

### Negligence *per se*

102.     Plaintiff re-alleges paragraphs 1-101 as if fully re-stated herein.

103.     Under the NYGBL § 349(a), CMS owed a recognized duty to plaintiff to effect collect of her alleged debt with reasonable care.

104.     Under the NYGBL § 349(a), CMS had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

105.     CMS breached each duty to plaintiff.

106.    CMS breached each duty to plaintiff by disregarding her right to be represented by counsel and by sending its collection letter directly to plaintiff at her home in defendants' campaign to collect the debt from plaintiff.

107.    CMS communicated with plaintiff directly in breach of its duty to effect collection of the debt with reasonable care and not to use deceptive acts and practices in the conduct of its business.

108.    As a direct consequence of CMS's said breach of duty to plaintiff, plaintiff suffered damage.

109.    As a direct consequence of CMS's said breach of duty to plaintiff, plaintiff suffered damage in that plaintiff felt annoyed, upset, confused, irritated and a sense that defendants wanted to harass her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt, and CMS's contacts with her directly caused plaintiff to fear that Fagenson & Puglisi no longer represented her in the matter of the debt and caused plaintiff to seek further legal advice and representation.

WHEREFORE, plaintiff respectfully prays that judgment be entered against CMS as follows:

(a)    awarding maximum statutory damages pursuant to 15 U.S.C. § 1692k;

(b)    awarding actual damages pursuant to 15 U.S.C. § 1692k in an amount to be determined at time of trial;

(c)    awarding reasonable attorneys' fees, costs and disbursements pursuant to 15 U.S.C. § 1692k;

(d)     enjoining CMS from continuing to communicate with plaintiff directly, pursuant to NYGBL § 349;

(e)     enjoining CMS from committing further deceptive acts and practices towards plaintiff, pursuant to NYGBL § 349;

(f)     awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(g)     in the alternative to (f), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(h)     awarding damages to plaintiff in the tort of negligence;

(i)     awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h); and

(j)     for such other and further relief as may be just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

**ALLEGATIONS AGAINST BANA**

AS AND FOR A FOURTH CAUSE OF ACTION

NYGBL § 349

110.   Plaintiff re-alleges paragraphs 1-109 as if fully re-stated herein.

111.   Under NYGBL, BANA owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

112.   As an alternative cause of action, BANA breached its duty to collect plaintiff's debt with reasonable care.

113.   BANA knew that plaintiff was represented by Fagenson & Puglisi before CMS sent its collection letter directly to plaintiff at her home.

114.   Northstar informed BANA that plaintiff was represented by Fagenson & Puglisi before CMS sent its collection letter directly to plaintiff at her home.

115.   Nevertheless, BANA did not inform CMS that plaintiff was represented by Fagenson & Puglisi.

116.   BANA did not inform CMS that plaintiff was represented by Fagenson & Puglisi before CMS sent its collection letter directly to plaintiff at her home.

117.   BANA caused CMS to send its collection letter directly to plaintiff at her home.

118.   In the exercise of reasonable care, BANA ought to have ensured that for any debt on which an attorney represented the consumer any communication by BANA or by any of its agents was made with the attorney and not with the consumer directly.

119.     The fact that BANA's agent, CMS, contacted plaintiff directly regarding the same debt for which BANA had been informed that plaintiff had legal representation indicates a failure on the part of BANA to comply with or to perform its duty to effect collection of the debt with reasonable care.

120.     On information and belief, at all times material to this complaint, BANA placed with CMS dozens of consumer accounts of New York residents each month for the purpose of collection.

121.     BANA's act of failing to inform CMS that plaintiff was represented by Fagenson & Puglisi is a deceptive act and practice.

122.     Said deceptive act and practice was committed by BANA in the conduct of a business, trade or commerce or the furnishing of a service in New York State and constitutes a violation of NYGBL § 349.

123.     BANA's deceptive act and practice was consumer–oriented, in that BANA's act of failing to inform CMS that plaintiff was represented by Fagenson & Puglisi despite knowledge that she was so represented was not an act limited to plaintiff's account, but extended to the accounts of other consumers which CMS obtained from BANA for collection and on which there was legal representation.

124.     BANA maintained no procedure to ensure that it did not communicate through its agent CMS, with consumers it knew to be represented by counsel.

125.     BANA's said conduct of failing to inform its agents that consumers are represented by legal counsel despite so knowing has a broader impact on consumers at large whose accounts are obtained by CMS from BANA for collection and who are represented by counsel in the matter of the collection of their debts.

126.     BANA owes a duty to plaintiff and consumers at large to honor their right to legal representation and BANA's failure to honor plaintiff's said right resulted in CMS, BANA's agent, sending its collection letter directly to plaintiff at her home, thereby improperly encouraging plaintiff to communicate with CMS directly about a debt for which BANA knew she had the representation of counsel.

127.     Therefore, BANA's failure to honor plaintiff's legal representation and its agent CMS's sending of its collection letter directly to plaintiff at her home were deceptive and misleading in a material way.

128.     Plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

129.     Upon receipt of CMS's collection letter at her home, plaintiff felt annoyed, upset, confused, irritated and a sense that defendants wanted to harass her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

130.     As a result of the above violations, plaintiff is entitled to injunctive relief against BANA and BANA is liable to plaintiff for damages in an amount to be determined at the time of trial, plus costs and attorneys' fees.

AS AND FOR A FIFTH CAUSE OF ACTION

Negligence *per se*

131.    Plaintiff re-alleges paragraphs 1 to 130 as if fully re-

stated herein.

132.    Under the NYGBL § 349(a), BANA owed a recognized duty to

plaintiff to effect collection of her alleged debt with reasonable care.

133.    Under the NYGBL § 349(a), BANA had a recognized duty not to use

deceptive acts and practices in the conduct of its business in the State of New York.

134.    BANA breached each duty to plaintiff.

135.    BANA breached each duty to plaintiff by failing to inform CMS

of plaintiff's legal representation, thereby disregarding plaintiff's right to legal representation and

causing CMS to send its collection letter directly to plaintiff at her home in its campaign to collect

the debt from plaintiff.

136.    BANA communicated with plaintiff directly, by its agent CMS, in breach

of its duty to effect collection of the debt with reasonable care.

137.    As a direct result of BANA's said breach of duty to plaintiff, plaintiff

suffered damage.

138.    As a direct result of BANA's said breach of duty to plaintiff, plaintiff

suffered damage in that plaintiff felt annoyed, upset, confused, irritated and a sense that

defendants wanted to harass her in their collection campaign to communicate with her directly

despite defendants' knowledge that she was represented by counsel in the matter of the debt, and

CMS's contacts with her directly caused plaintiff to fear that Fagenson & Puglisi no longer

represented her in the matter of the debt and caused plaintiff to seek further legal advice and

representation.

139.    BANA is directly liable for its own conduct in failing to inform CMS that plaintiff was represented by Fagenson & Puglisi before CMS sent its collection letter directly to plaintiff at her home.

140.    Even if BANA had informed CMS of plaintiff's legal representation in a timely manner, BANA is nevertheless vicariously liable to plaintiff for the improper conduct of its agent CMS in nevertheless communicating directly with plaintiff.

WHEREFORE, plaintiff respectfully prays that judgment be entered against BANA as follows:

(a)    enjoining BANA from continuing to communicate with plaintiff directly through its agents, pursuant to NYGBL § 349;

(b)    enjoining BANA from committing further deceptive and misleading acts and practices against plaintiff, pursuant to NYGBL § 349;

(c)    awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(d)    in the alternative to (c), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(e)    awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h);

(f)    awarding damages to plaintiff in the tort of negligence; and

(g)    for such other and further relief as may be just and proper.

DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

## ALLEGATIONS AGAINST NORTHSTAR

### AS AND FOR A SIXTH CAUSE OF ACTION

#### Improper failure to inform BANA of Plaintiff's legal representation

15 U.S.C. §§ 1692e and 1692e(2)(A)

141.   Plaintiff re-alleges paragraphs 1-140 as if fully re-stated herein.

142.   By the letter dated May 21, 2019, Fagenson & Puglisi informed Northstar that plaintiff was represented by counsel.

143.   Northstar received Fagenson & Puglisi's aforesaid letter.

144.   Northstar knew that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before CMS sent its collection letter directly to plaintiff at her home in September 2019.

145.   Pursuant to 15 U.S.C. § 1692e(2)(A), Northstar had a duty to inform BANA that plaintiff was represented by Fagenson & Puglisi in the matter of the debt.

146.   As and for an alternative cause of action, Northstar did not inform BANA that plaintiff was represented by Fagenson & Puglisi in the matter of the debt.

147.   Northstar did not inform BANA that plaintiff was represented by Fagenson & Puglisi in the matter of the debt before CMS sent its collection letter directly to plaintiff at her home.

148.   Northstar is therefore in violation of 15 U.S.C. § 1692e(2)(A), for its failure to inform BANA that plaintiff was represented by Fagenson & Puglisi in the matter of the debt, thereby falsely representing the nature and character of the debt.

149.     Northstar is also in violation of 15 U.S.C. § 1692e in that its failure to inform BANA that plaintiff was represented by Fagenson & Puglisi constitutes a false, deceptive and misleading means used by Northstar in connection with the collection of the debt, because such failure caused BANA to authorize CMS to send its collection letter directly to plaintiff at her home.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### NYGBL § 349

150.     Plaintiff re-alleges paragraphs 1-149 as if fully re-stated herein.

151.     Northstar owed a duty to plaintiff to effect its collection of plaintiff's alleged debt with reasonable care.

152.     As and for an alternative cause of action, Northstar breached its duty to collect plaintiff's debt with  reasonable care.

153.     In the exercise of reasonable care, Northstar ought to have ensured that Northstar informed BANA of any account for which Northstar received notice that an attorney represented the consumer.

154.     Fagenson & Puglisi's letter dated May 21, 2019 to Northstar notified Northstar of Fagenson & Puglisi's legal representation of plaintiff.

155.     Northstar received Fagenson & Puglisi's letter as evidenced by Northstar's response letter to Fagenson & Puglisi at Exhibit 1.

156.     The fact that CMS contacted plaintiff directly regarding the same debt for which Northstar had previously been notified that plaintiff had legal representation indicates a failure on the part of Northstar to comply with or to perform its duty to effect collection of the debt with reasonablecare.

157.     Had Northstar duly informed BANA of plaintiff's representation by counsel then BANA would have so informed CMS and CMS would not have sent its several collection letter directly to plaintiff at her home in September 2019.

158.     On information and belief, at all times relevant herein, BANA placed dozens of consumer accounts of New York residents with Northstar for collection each month.

159.     Northstar's act of failing to inform BANA that plaintiff was represented by Fagenson & Puglisi is a deceptive act and practice and caused CMS to unlawfully communicate directly with plaintiff.

160.     Said deceptive act and practice was committed by Northstar in the conduct of a business, trade or commerce or the furnishing of a service in New York State and constitutes a violation of NYGBL § 349.

161.     Northstar's deceptive act and practice was consumer–oriented, in that Northstar's act of causing CMS to communicate directly with a legally–represented consumer, despite Northstar's knowledge that she was represented by counsel, was not an act limited to plaintiff's account, but extended to the accounts of other consumers which BANA placed with Northstar for collection and on which Northstar had been notified there was legal representation.

162.     At all times relevant herein, Northstar maintained no agreement or procedure with BANA to ensure that Northstar duly informed BANA of all BANA accounts for which Northstar was notified that an attorney represented the consumers.

163.     Northstar's said conduct of failing to inform BANA that consumers are represented by counsel has a broader impact on consumers at large whose accounts are placed by BANA with Northstar for collection and who are represented by counsel in the matter of the collection of their BANA debts.

164.     Northstar owes a duty to plaintiff and consumers at large to honor their right to legal representation and Northstar's failure to honor plaintiff's said right, because of its failure to inform BANA of plaintiff's legal representation, resulted in BANA placing the debt with CMS for collection without informing CMS that plaintiff was represented by counsel, thereby causing CMS to send its collection letter directly to plaintiff at her home and, further, thereby improperly encouraging plaintiff to contact BANA's agent, CMS, directly about a debt for which she had the representation of legal counsel.

165.     Therefore, Northstar's failure to honor plaintiff's legal representation through its failure to inform BANA of said legal representation and to have an agreement and procedure to prevent such failures were deceptive in a material way.

166.     Plaintiff is a reasonable consumer within the meaning of the NYGBL and acted reasonably under the circumstances of this case.

167.     Upon receipt of CMS's collection letter at her home, plaintiff felt annoyed, upset, confused, irritated and a sense that defendants wanted to harass her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt.

168.     Northstar violated  NYGBL  §  349(a)  by improperly failing to inform BANA that plaintiff was represented by counsel in the matter of the debt, and Northstar is liable to plaintiff under NYGBL § 349(h).

169.     As a result of the above violations, Northstar is liable to plaintiff for an injunction and damages in an amount to be determined at the time of trial, plus costs and reasonable attorneys' fees.

AS AND FOR AN EIGHTH CAUSE OF ACTION

Negligence *per se*

170.    Plaintiff re-alleges paragraphs 1-169 as if fully re-stated herein.

171.    Under the NYGBL §  349(a), Northstar owed a recognized duty to plaintiff to effect collect of her alleged debt with reasonable care.

172.    Under the NYGBL §  349(a), Northstar had a recognized duty not to use deceptive acts and practices in the conduct of its business in the State of New York.

173.    As and for an alternative cause of action, Northstar breached each duty to plaintiff.

174.    Northstar breached each duty to plaintiff by disregarding her right to be represented by counsel, failing to inform BANA that plaintiff was represented by Fagenson & Puglisi and thereby causing CMS to send its collection letter directly to plaintiff at her home in its campaign to collect the debt from plaintiff.

175.    Northstar caused CMS to communicate with plaintiff directly in breach of its duty to effect collection of the debt with reasonable care.

176.    As a direct consequence of Northstar's said breach of duty to plaintiff, plaintiff suffered damage.

177.    As a direct consequence of Northstar's said breach of duty to plaintiff, plaintiff suffered damage in that plaintiff felt annoyed, upset, confused, irritated and a sense that defendants wanted to harass her in their collection campaign to communicate with her directly despite defendants' knowledge that she was represented by counsel in the matter of the debt, and CMS's contacts with her directly caused plaintiff to fear that Fagenson & Puglisi no longer represented her in the matter of the debt and caused plaintiff to seek further legal advice and representation.

WHEREFORE, plaintiff respectfully prays that judgment be entered against Northstar as follows:

(a)  awarding maximum statutory damages pursuant to 15 U.S.C. § 1692k;

(b)  awarding actual damages pursuant to 15 U.S.C. § 1692k in an amount to be determined at time of trial;

(c)  awarding reasonable attorneys' fees, costs and disbursements pursuant to 15 U.S.C. § 1692k;

(d)  enjoining Northstar from continuing to communicate with plaintiff directly, pursuant to NYGBL § 349;

(e)  enjoining Northstar from committing further deceptive acts and practices towards plaintiff, pursuant to NYGBL § 349;

(f)  awarding actual damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(g)  in the alternative to (f), awarding statutory damages pursuant to NYGBL § 349 in an amount to be determined at time of trial;

(h)  awarding damages to plaintiff in the tort of negligence;

(i)  awarding reasonable attorneys' fees, costs and disbursements pursuant to NYGBL § 349(h); and

(j)  for such other and further relief as may be just and proper.

DEMAND FOR TRIAL BY JURY

Plaintiff requests trial by jury on all issues so triable.

Dated: New York, New York
      November 22, 2019.


                                  */s/ Novlette R. Kidd*
                                  NOVLETTE  R. KIDD, ESQ. (NK 9339)
                                  FAGENSON & PUGLISI, PLLC
                                  Attorneys for Plaintiff
                                  450 Seventh Avenue, Suite 704
                                  New York, New York 10123
                                  Telephone: (212) 268-2128
                                  Nkidd@fagensonpuglisi.com